[No. B127721. Second Dist., Div. Six. Nov. 9, 1999.]

MICHAEL C. KNOELL, Plaintiff and Appellant, v.
SUSAN F. PETROVICH, Defendant and Respondent.

**COUNSEL**

Jencks Law Group, Michael R. Jencks and Cynthia C. Rucker for Plaintiff and Appellant.

Hatch & Parent, Stanley M. Roden, Jeffery H. Speich and Kelly McIntyre Knight for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—Michael C. Knoell appeals from a judgment of dismissal entered after the trial court sustained, without leave to amend, a demurrer to the third amended complaint for damages against Attorney Susan F. Petrovich. The trial court concluded that the action was barred by the litigation privilege (Civ. Code, § 47, subd. (b)(2)) and the statute of limitations (Code Civ. Proc., §§ 340, subd. (3), 339, subd. 1). We affirm.

### FACTS AND PROCEDURAL HISTORY

In 1994 Joan Johnson retained Attorney Petrovich to extinguish a deed granting appellant an easement across Johnson's property. The deed purported to expand an existing 14-foot-wide access easement to a 20-foot-wide

easement. Johnson had been involved in several real estate ventures with appellant but did not recall executing the 20-foot easement deed. She believed that appellant may have forged her signature.

Attorney Petrovich sent a December 5, 1994, demand letter requesting that appellant extinguish the easement deed which "may or may not be a forgery." (See exhibit A in the appen., *post*, at p. 172.) When appellant failed to rescind the deed, Attorney Petrovich sent a January 26, 1995, letter to the Lompoc City Attorney to investigate alternative access to appellant's lots. (See exhibit B in the appen., *post*, at p. 174.) The letter stated: "Ms. Johnson takes the position that the easement was obtained by fraud and deception and has sent a rescission letter to Mr. Knoell. Mr. Knoell has a valid access easement across Ms. Johnson's property, but that easement is only 14 feet wide. The 20-foot wide disputed easement has many existing obstructions and Mrs. Johnson's garage door opens directly into it." The letter indicated that Johnson's neighbors would grant appellant a new easement for egress and ingress if the city abandoned its plan to extend the public street.

Attorney Petrovich settled the easement dispute with appellant. On July 10, 1995, appellant executed a quitclaim deed extinguishing the 20-foot easement deed.

Appellant claimed that he was coerced into the settlement and filed suit against Johnson for defamation, slander of title, breach of contract, and interference with contractual relations. (Knoell v. Johnson (Super. Ct. Santa Barbara County, No. SM94109).) At trial in No. SM94109, Attorney Petrovich testified that Johnson told her (Petrovich) that while the signature on the 20-foot easement deed "looked like her signature," she (Johnson) was not sure that the signature was genuine. Attorney Petrovich also testified that Johnson said it could be a forgery because she (Johnson) "never signed an easement grant deed to Mr. Knoell." The jury, however, awarded appellant $120,000 in damages. The propriety of this judgment is not before us.

On November 14, 1997, appellant sued Attorney Petrovich for defamation, unfair business practices, interference with contractual relations, interference with prospective business advantage, and misrepresentation. Attorney Petrovich successfully demurred to the first amended complaint on the ground that it was barred by the litigation privilege (Civ. Code, § 47, subd. (b)(2)) and the statute of limitations (Code Civ. Proc., §§ 339, subd. 1, 340, subd. (3)).

Appellant filed a second amended complaint, adding a cause of action for extortion. The amended complaint alleged that Attorney Petrovich "misused

the threats of civil prosecution and the color of her office as an attorney and officer of the court, for the purpose of compelling and coercing plaintiff's capitulation to defendant's demand to surrender his property interest in the easement and/or the payment of money by the wrongful and knowingly false accusations of crime . . . ."

Attorney Petrovich demurred again. The trial court sustained the demurrer without leave to amend on the first, second, fourth, and fifth causes of action for libel per se, slander per se, interference with contractual relations, and interference with prospective business advantage. The demurrer to the third, sixth, and seventh causes of action for unfair business practices, extortion, professional negligence and misrepresentation was sustained with leave to amend.

Appellant filed a third amended complaint alleging the same basic facts. The trial court sustained Attorney Petrovich's demurrer without leave to amend on the ground that the action was barred by the litigation privilege and the statute of limitations.

### Statute of Limitations

The third amended complaint alleges that Attorney Petrovich published defamatory letters on December 5, 1994, and January 26, 1995, and slandered appellant at a February 16, 1995, office conference. The action was filed November 14, 1997, more than two years later. The trial court ruled that the defamation causes of action were barred by the one-year statute of limitations (Code Civ. Proc., § 340, subd. (3)), and the causes of action for interference with contractual relations and interference with prospective business advantage were barred by the two-year statute of limitations. (Code Civ. Proc., § 339, subd. 1; *Tu-Vu Drive-In Corp.* v. *Davies* (1967) 66 Cal.2d 435, 437 [58 Cal.Rptr. 105, 426 P.2d 505].) It did not err. The statute of limitations commenced to run when the alleged defamatory statements were published. (*Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613].)

Appellant contends that the statute of limitations was tolled until 1997. The third amended complaint alleges that appellant did not discover the false publication until the Johnson trial. Appellant, however, is estopped by his verified complaint and first amended complaint which allege that appellant "did not, and could not have reasonably discovered the acts, omissions, misrepresentations, and conduct of Defendants . . . until at least on or about December 21, 1995 when in the course of discovery in other litigation it was disclosed that there was no basis, reasonable, or otherwise, for Defendants to

make the defamatory statements . . . ." Because of the judicial admission, appellant cannot plead contradictory facts to toll the statute of limitations. (E.g., *Gaglione* v. *Coolidge* (1955) 134 Cal.App.2d 518, 523 [286 P.2d 568]; *Rogers* v. *Bank of America* (1956) 140 Cal.App.2d 228, 230-231 [294 P.2d 959]; 5 Witkin, Cal. Procedure, (4th ed. 1997) Pleading, § 1123, p. 578.)

Equally without merit is the argument that the statute of limitations was tolled until Johnson waived the attorney-client privilege. In 1995 appellant knew that Attorney Petrovich authored the letters. No facts are alleged that Attorney Petrovich concealed her identity or fraudulently induced appellant to delay filing the action. (Cf. *Bernson* v. *Browning-Ferris Industries, supra,* 7 Cal.4th 926, 936 [defendants estopped from asserting statute to limitations where they concealed their identity and authorship of the defamatory material].)

Appellant, however, argues that the four-year statute of limitations for legal malpractice applies. (Code Civ. Proc., § 340.6, subd. (a)(3).) "Section 340.6 provides that the statute of limitations for legal malpractice commences when the *client discovers*, or should have discovered, the cause of action. The period is tolled during the times, inter alia, (i) *the client* 'has not sustained actual injury,' (ii) the negligent attorney continues to represent *the client*, (iii) the attorney willfully conceals facts constituting the negligence, or (iv) the plaintiff is under a disability that 'restricts the plaintiff's ability to commence legal action.'" (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 609 [7 Cal.Rptr.2d 550, 828 P.2d 691], italics added.)

Appellant has cited no authority for the novel claim that a third party (i.e., a nonclient) may invoke Code of Civil Procedure section 340.6 to toll the statute of limitations when suing an attorney for defamation. Because the causes of action for libel per se, slander per se, interference with contractual relations, and interference with prospective business advantage are based on the same publication, they are all time-barred. We reject the argument that appellant could sue Johnson for defamation, obtain a $120,000 judgment, and file a new action against Attorney Petrovich based on the same publication.

### Litigation Privilege

The trial court also ruled that the third amended complaint was barred by the litigation privilege. ■ Civil Code section 47, subdivision (b)(2), provides an absolute privilege for publications in a judicial proceeding. The privilege has been broadly construed to apply to demand letters and prelitigation communications by an attorney. (*Rubin* v. *Green* (1993) 4 Cal.4th

1187, 1193-1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) "Although originally enacted with reference to defamation actions alone [citation], the privilege has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution. [Citations.]" (*Edwards* v. *Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29 [61 Cal.Rptr.2d 518], original italics.)

 Appellant contends that the litigation privilege is qualified because the defamatory statements were used to "leverage" a settlement. Appellant's reliance on *Nguyen* v. *Proton Technology Corp.* (1999) 69 Cal.App.4th 140 [81 Cal.Rptr.2d 392] is misplaced. There, the plaintiff sued his former employer (Proton) for libel after it sent a demand letter to plaintiff's current employer to stop soliciting Proton's employees and customers. The letter falsely stated that the plaintiff had a criminal record and had served a prison sentence for violently assaulting his wife. Citing *Kinnamon* v. *Staitman & Snyder* (1977) 66 Cal.App.3d 893 [136 Cal.Rptr. 321] and *Carney* v. *Rotkin, Schmerin & McIntyre* (1988) 206 Cal.App.3d 1513 [254 Cal.Rptr. 478], the Court of Appeal held that the litigation privilege did not apply where an attorney threatens or misrepresents the existence of criminal proceedings. (*Nguyen* v. *Proton Technology Corp., supra,* 69 Cal.App.4th at p. 152.) The court concluded that the references in the demand letter to the plaintiff's criminal record fell outside the litigation privilege and were not "connected" to the unfair competition claim. (*Id.,* at p. 151.)

Here the December 1994 demand letter states that the easement deed "may or may not be a forgery." Attorney Petrovich did not threaten criminal prosecution. The demand letter and subsequent communications were absolutely privileged. (E.g., *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 575-576 [131 Cal.Rptr. 592] [letter accusing plaintiff of fraudulent misrepresentation absolutely privileged]; *Larmour* v. *Campanale* (1979) 96 Cal.App.3d 566, 568 [158 Cal.Rptr. 143] [demand letter stating that clients had been advised that they could sue for punitive damages based upon plaintiff's fraud was privileged].) "[T]he conduct of defendants alleged in the complaint is clearly communicative and otherwise within the scope of section 47(b). It is thus absolutely immune from civil tort liability, including plaintiff's interference with contract and related claims." (*Rubin* v. *Green, supra,* 4 Cal.4th 1187, 1202-1203.)

Appellant's reliance upon *Edwards* v. *Centex Real Estate Corp., supra,* 53 Cal.App.4th 15, is misplaced. There, the communications occurred more than five years before the civil action was filed. Because the statements were remote in time, the Court of Appeal held that the litigation privilege did not apply: "[T]he privilege only arises at the point in time when litigation is no

longer a mere possibility, but has instead ripened into a *proposed proceeding* that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute. [Citation.]" (*Id.*, at p. 39, original italics.)

Unlike *Edwards*, Attorney Petrovich's communications were timely and directed to the easement dispute. The December 5, 1994, letter was in contemplation of litigation and a condition precedent to an action for rescission. (Civ. Code, § 1691, subd. (a).) The January 1995 letter to the city attorney was also privileged and sent in anticipation of litigation. (E.g., *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 781-782 [54 Cal.Rptr.2d 830].)

The trial court took judicial notice of the letters, which are attached hereto. Having reviewed the letters and the pleadings, we conclude that the action is barred by Civil Code section 47, subdivision (b)(2). Appellant cannot plead around the litigation privilege based on the theory that the defamatory statements were fraudulently published to coerce a settlement. (E.g., *Harris* v. *King* (1998) 60 Cal.App.4th 1185, 1187-1188 [70 Cal.Rptr.2d 790] [workers' compensation report absolutely privileged even though maliciously prepared and published].)

Civil Code section 47, subdivision (b)(2), "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. '[I]t is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .' [Citation.]" (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 214 [266 Cal.Rptr. 638, 786 P.2d 365].) This principle allowed appellant's attorney to accuse Attorney Petrovich of having committed a crime at oral argument. It is the same principle that allowed Attorney Petrovich to publish the two letters.

Gilbert, Acting P. J., and Coffee J., concurred.

Appellant's petition for review by the Supreme Court was denied March 1, 2000.

## APPENDIX

 

STANLEY C. HATCH
GERALD B. PARENT *
S. TIMOTHY BURNAM
SUSAN F. PETROVICH
PETER R. BROWN
STANLEY M. RODEN
SCOTT S. SLATER
STEVEN A. AMERIKANER
GARY M. KVISTAD
CHRISTOPHER A. JACOBS
KEVIN J. NEESE
COLIN L. PEARCE
JEFFREY A. DINKIN ‡
LORI LEWIS PERRY
ROBERT J. SAPERSTEIN
JEANNE M. MacCALDEN
JOSEF D. HOUSKA
CRAIG A. SMITH
SARAH J. KNECHT
STEPHANIE C. OSLER
KIMBERLY L. ADKIN
V. MICHAEL MUTTARI
BRADLEY E. LUNDGREN
SUSAN M. CHUBERKA
MERRILEE F. FELLOWS

LAW OFFICES

### HATCH and PARENT

A PROFESSIONAL CORPORATION

21 EAST CARRILLO STREET

SANTA BARBARA, CALIFORNIA 93101-2782

ALL MAIL:
POST OFFICE DRAWER 720
SANTA BARBARA, CALIFORNIA 93102-0720

TELEPHONE
(805) 963-7000

FACSIMILE
(805) 965-4333

* CERTIFIED SPECIALIST, ESTATE
PLANNING, TRUST AND PROBATE LAW
CERTIFIED BY STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

‡ ALSO LICENSED IN NEVADA

OUR FILE #
DIRECT DIAL #
INTERNET

December 5, 1994

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Michael C. Knoell
1446 N.W. First Street
Bend, OR 97701

RE: Joan Johnson Rescission of 20-Foot Wide Access Easement Across
1313 East Hickory Avenue

Dear Mr. Knoell:

The purpose of this letter is advise you that Joan Johnson hereby rescinds and disavows the Easement Grant Deed, dated June 20, 1994, and recorded against her property at 1313 East Hickory Street, Lompoc, as Instrument No. 94-52656, Official Records of the County of Santa Barbara, on June 24, 1994.

Mrs. Johnson just learned of the existence of this document, which purports to create a new 20-foot wide easement in front of her house. Mrs. Johnson has consented to a 14-foot wide easement but has never agreed to a 20-foot wide easement.

The signature on the Easement Grant Deed may or may not be a forgery. We cannot be positive without having an expert review the original document. Mrs. Johnson recalls signing a similar document at your request (she doesn't recall the word "Easement" being written in when she signed) but she recalls you telling her that it was a part of the Parcel Map LOM 475P, and not an easement across the front of her property. As Mrs. Johnson recalls, the document which she signed had no legal description attached to it at the time she signed. It was only her long-standing friendship and business relationship with you which caused her to trust you enough to sign what amounted to a blank document. As her partner, you had a fiduciary obligation not to abuse Mrs. Johnson's trust.

This easement has a devastating impact upon Mrs. Johnson's ability to exit her garage safely, encroaches upon her existing curbing and landscaping, and eliminates all parking in front of her house. She never would have knowingly granted such an easement.

**EXHIBIT A**

00056

 

Mr. Michael C. Knoell
December 5, 1994
Page 2

I have offered verbally to work with you to try to resolve this matter amicably. Although she would prefer that the parcels which result from the Parcel Map use another accessway, Mrs Johnson is willing to live with the 14-foot easement to which she agreed. We are investigating alternative access routes and have contacted the City of Lompoc to determine under what circumstances the City would allow either the 14-foot wide access or another route altogether.

Mrs. Johnson and I would like to work amicably with you to resolve this issue with minimal expense and attorneys' fees on both sides. She will never consent to the 20-foot wide easement. If litigation becomes necessary to resolve the matter, not only will we seek a declaration of rescission, but also damages for slander of title (which allows for recovery of the slandered party's attorneys fees), intentional and negligent infliction of emotional distress, intentional and negligent misrepresentation/nondisclosure, and breach of fiduciary obligation, in addition to any other causes of action which may be relevant.

I hereby demand on Mrs. Johnson's behalf that you deliver to her a quitclaim deed, quitclaiming the easement described in Instrument No. 94-52656.

Mrs. Johnson believes that she can persuade a jury that you not only took advantage of her friendship and trust, but that you modified the document which she signed after her signature was affixed. Please advise me in writing whether or not you are willing to seek a solution which involves elimination of the 20-foot wide easement. If I do not hear from you by December 16, 1994, I will assume that you do not intend to work toward an amicable solution. A failure to timely respond will leave Mrs. Johnson with no recourse except legal action.

Sincerely,

Susan F. Petrovich
For HATCH AND PARENT

SFP:lkh
13332.1

cc: Mrs. Joan Johnson

STANLEY C. HATCH
GERALD B. PARENT *
S. TIMOTHY BUYNAK
SUSAN F. PETROVICH
PETER N. BROWN
STANLEY M. ROBEN
SCOTT S. SLATER
STEVEN A. AMERIKANER
GARY M. KVISTAD
CHRISTOPHER A. JACOBS
KEVIN J. NEESE
COLIN L. PEARCE
JEFFREY A. DINKIN ‡
LORI LEWIS PERRY
ROBERT J. SAPERSTEIN
JEANNE M. MacCALDEN
JOSEF D. HOUSKA
CRAIG A. SMITH
SARAH J. KNECHT
STEPHANIE C. OSLER
KIMBERLY E. ASAIN
V. MICHAEL MUTTART
BRADLEY E. LUNDGREN
SUSAN M. CHUBERKA
MERRILEE A. FELLOWS

LAW OFFICES

## HATCH AND PARENT

A PROFESSIONAL CORPORATION

21 EAST CARRILLO STREET

SANTA BARBARA, CALIFORNIA 93101-2702

ALL MAIL:
POST OFFICE DRAWER 720
SANTA BARBARA, CALIFORNIA 93102-0720

TELEPHONE. (805) 963-7000
FACSIMILE (805) 965-4333

SOUTH LAKE TAHOE OFFICE
THE SUMMIT
SOUTH LAKE TAHOE, CA 96150
TELEPHONE: (916) 541-7500

VENTURA COUNTY OFFICE
300 ESPLANADE DRIVE, 19TH FLOOR
OXNARD, CALIFORNIA 93030
TELEPHONE: (805) 981-1818

* CERTIFIED SPECIALIST, ESTATE
PLANNING, TRUST AND PROBATE LAW
CERTIFIED BY STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

‡ ALSO LICENSED IN NEVADA

OUR FILE #
DIRECT DIAL #
INTERNET. J7439.1

January 26, 1995

VIA FACSIMILE (805) 736-5347

Ms. Sharon Stewart
Lompoc City Attorney's Office
City Hall
100 Civic Center Plaza
Lompoc, CA 93436

RE: Joan Johnson-Mike Knoell Dispute and Proposed Resolution

Dear Ms Stewart:

As you and I discussed very briefly by telephone, Mike Knoell recorded an easement, 20 feet wide, across Joan Johnson's property. Mr. Knoell showed this easement as the sole access to the property which was the subject of his lotline adjustment/lot split (LOM 475-P)

Ms. Johnson takes the position that the easement was obtained by fraud and deception and has sent a rescission letter to Mr. Knoell. Mr. Knoell has a valid access easement across Ms. Johnson's property, but that easement is only 14 feet wide. The 20-foot wide disputed easement has many existing obstructions and Mrs. Johnson's garage door opens directly into it. The opening door itself swings into what would be the travelled way. The 20-foot wide easement would be unsafe and would be subject to obstruction whenever anyone parked in front of Mrs. Johnson's home.

Recent investigation reveals that the City of Lompoc's easement for East Hickory Street extends beyond the present edge of pavement. The edge of pavement is approximately at the "R" in Hickory on the enclosed plot plan. According to City records and the title company, this street has not been abandoned. The residents of the neighborhood are united in their opposition to East Hickory Street being extended to provide access to the Knoell lots, although they do not oppose extension of underground utilities within this area.

Mr. and Mrs. Hauenstein, who own property on East Hickory Street, and who own the underlying fee for the East Hickory Street extension, also own the property which would

**EXHIBIT B**

00059

 

Ms. Sharon Stewart
January 26, 1995
Page 2

be an extension of 5th Street. Although 5th Street shows on the Assessor's Map as a City street, there is no record of it ever having been dedicated. It is private property.

Mr. and Mrs. Hauenstein have offered, in exchange for City abandonment of the extension of East Hickory, to grant a private ingress and egress easement to the Knoell lots, 20 feet wide, along the 5th Street extension.

The enclosed map depicts the location of the various easements and properties in question. Mr. Knoell must provide access to two (2) lots (Lots 1 and 4 depicted on the plot plan). The Fire Chief has indicated that a 20-foot wide easement along the 5th Street extension will meet his department's requirements, provided part of East Hickory is used as a hammerhead turnaround. Regardless of whether the Knoell lots use the East Hickory extension, the private Johnson property easement, or the 5th Street extension, garbage collection trucks will not be able to collect from in front of the lots because of inadequate turnaround space. They will have to push or carry their trash cans to just beyond the Johnson property line or out to Olive. Mrs. Johnson has agreed to allow them to cross her property solely for this purpose.

Mr. Knoell's recorded map shows the disputed 20-foot wide easement as the sole access to these lots. I already have offered to the City of Lompoc that, if necessary, I will draft the enabling ordinance, permitted by statute, whereby applicants wishing to revise maps or map conditions can seek a map revision rather than go back through the land division process. Perhaps the City already has such an ordinance in place. I prepared this same ordinance for the County of Santa Barbara some years ago when, because of budgetary constraints, the County could not afford to dedicate staff time to creating a cost-saving ordinance for applicants.

The proposal is to change the access to these two lots so that it crosses the Hauenstein property rather than the Johnson property. Both areas are level so there are no topographic constraints.

If you have any questions about the proposal or the enclosed site map, please call me.

Very truly yours,

Susan F. Petrovich
For HATCH AND PARENT

SFP:lkh
14702.1
Enclosure
cc: Ms. Joan Johnson

00060