[No. B198253. Second Dist., Div. Five. Mar. 12, 2008.]

MARK NEVILLE, Cross-complainant and Appellant, v.
GREGORY CHUDACOFF, Cross-defendant and Respondent.

COUNSEL

Law Offices of Paul Ottosi and Paul Ottosi for Cross-complainant and Appellant.

Julia S. Swanson for Cross-defendant and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

This is an appeal from an order granting a special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code

Civ. Proc., § 425.16.)[1] An employer fired one of its employees amid allegations that the employee had misappropriated customer lists and solicited his employer's customers to start a competing business. Several months before litigation was commenced by the employer against its former employee, the employer's attorney drafted a letter to the employer's customers that accused the employee of breach of contract and misappropriation of trade secrets, and that "suggest[ed]" to the customers that, to avoid potential involvement in any ensuing litigation "as a material witness, or otherwise," the customers should not do business with the former employee. The employee commenced a defamation action[2] against the former employer. We hold that, in the circumstances of this case, the lawyer's letter to the customers was a "writing made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)) and therefore covered by the anti-SLAPP statute because the letter directly related to the employer's claims against the employee, and the employer was seriously and in good faith contemplating litigation against the employee. We therefore affirm.

## BACKGROUND

Cross-complainant and appellant Mark Neville is a former employee of M.J.K. Trading Co., Inc., which does business as Maxsecurity, Inc. (Maxsecurity). Maxsecurity is in the business of developing and installing high-end audio and security systems. Maxsecurity terminated Neville's employment in December 2004, asserting that Neville, while employed by Maxsecurity, misappropriated its customer lists and secretly solicited its customers so he could start a competing business, in violation of Neville's written employment and confidentiality agreement with Maxsecurity.

Cross-defendant and respondent Gregory Chudacoff is an attorney who represented Maxsecurity in connection with its dispute with Neville. At Maxsecurity's request, Chudacoff drafted a letter dated May 13, 2005 (the Letter), addressed to Maxsecurity's customers. Chudacoff gave the Letter to Maxsecurity, which Neville alleges, sent copies to its existing and former customers. The reference line of the Letter read, "Maxsecurity v. Mark Neville, dba ABD Audio and Video." The body of the Letter contained the following:

"Please be advised that this office represents Maxsecurity in the above-matter [*sic*]. It has recently come to our attention that a former employee of

---

[1] Statutory references are to the Code of Civil Procedure unless stated otherwise.

[2] The employee referred to his action as "slander," but as his claim concerned a writing, the action should have been referred to as one for libel. (Civ. Code, § 45.)

Maxsecurity may have been in contact with you, or may attempt to contact you. The name of the former employee is Mark Neville, and he may be representing himself as ABD Audio and Video.

"Mr. Neville is in direct violation of an employment and confidentiality agreement he had with Maxsecurity. Mr. Neville's relationship with Maxsecurity ended at the end of last year. Contact and/or communication with Maxsecurity customers was, and is, specifically prohibited under his employment contract. We have notified Mr. Neville of his breach and shall be aggressively pursue [*sic*] all available remedies.

"Any work contracted with Mr. Neville or his company would be in violation of our agreement with him. In order to avoid any involvement in litigation that my [*sic*] arise between us and Mr. Neville (as a material witness, or otherwise), we suggest that you have no further dealings with Mr. Neville or his company. You should know that any monies paid to him or his company properly belong to Maxsecurity, and we shall, if necessary, seek an accounting of all monies paid out."

In September 2005,[3] Maxsecurity filed suit against Neville. In its second amended complaint, Maxsecurity stated eight causes of action arising from Neville's alleged misappropriation of Maxsecurity's customer lists and related misconduct. In May 2006, Neville filed a cross-complaint against Maxsecurity and its principals stating six causes of action, including a claim for defamation arising from alleged "false accusations, representations, statements and comments" made by Maxsecurity to its "existing and former customers impugning and maligning the character and business reputation of [Neville]." In July 2006, Neville filed an amendment to the cross-complaint naming Chudacoff as a fictitious Roe defendant.

Chudacoff moved to strike the cross-complaint pursuant to the anti-SLAPP statute, arguing that Neville's claims against him arose from the Letter and that the Letter was constitutionally protected petitioning activity within the meaning of section 425.16, subdivision (e)(2), (4).[4] The trial court concluded

---

[3] Neville failed to include in the record on appeal copies of Maxsecurity's original complaint and the register of actions, the latter omission being in violation of California Rules of Court, rules 8.122(b)(1)(F) and 8.124(b)(1)(A). The record on appeal thus does not indicate the date the action below was filed. Both parties represent in their briefs that the action was filed on September 30, 2005.

[4] Neville's cross-complaint does not explicitly refer to either Chudacoff or the Letter. Neville, however, does not dispute that his claims against Chudacoff arise entirely from the Letter.

that the Letter was related to the dispute between Maxsecurity and Neville, and was therefore petitioning activity protected by the anti-SLAPP statute. Neville submitted no evidence to establish the probability that he would prevail on the merits. The trial court therefore granted the special motion to strike. Neville timely appealed.[5]

## DISCUSSION

### A. *The Anti-SLAPP Statute and Standard of Review*

■ "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) Pursuant to section 425.16, subdivision (b)(1), a litigant may move to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." Such acts include "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body . . . ." (§ 425.16, subd. (e)(2).) "Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35 [64 Cal.Rptr.3d 348] (*Rohde*); see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

■ To apply the anti-SLAPP statute, courts engage in a two-step process. " 'First, the court decides whether the [moving party] has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the [complaining party] has demonstrated a probability of

---

[5] Neville failed to include his notice of appeal in his appendix, in violation of California Rules of Court, rules 8.122(b)(1)(A) and 8.124(b)(1)(A). The notice of appeal is in the court file, however. Although we do not condone Neville's failure to comply with the applicable rules, we decline Chudacoff's invitation to dismiss the appeal, and we augment the record with the notice of appeal on our own motion. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

prevailing on the claim.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 703 [54 Cal.Rptr.3d 775, 151 P.3d 1185], quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) In analyzing whether the moving party has met its burden of showing that the suit arises from protected activity, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

An order granting a special motion to strike under section 425.16 is appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) We review the trial court's order de novo. (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79 [55 Cal.Rptr.3d 600].) We do not weigh the evidence; rather, we accept as true evidence favorable to plaintiff, and evaluate evidence favorable to defendant to determine whether it defeats plaintiff's claim as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; accord, *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279 [55 Cal.Rptr.3d 544].)

### B. *Chudacoff Met His Burden of Proving That Neville's Claim Arose from Protected Activity*

Neville's sole contention on appeal is that Chudacoff failed to meet his threshold burden of proving that the Letter was written "in connection with an issue under consideration or review by a legislative, executive, or judicial body" as required by section 425.16, subdivision (e)(2).[6] Neville argues that the Letter was written more than four months before Maxsecurity filed its lawsuit against Neville, and Chudacoff did not expressly declare that when the letter was sent, Maxsecurity contemplated litigation seriously and in good faith. Furthermore, Neville asserts, the Letter was addressed to Maxsecurity's customers, who were not to be (and ultimately were not) parties to any anticipated lawsuit against Neville by Maxsecurity.

Both parties and the trial court appear to have assumed that whether a statement is a protected activity under section 425.16, subdivision (e)(2) is determined by ascertaining whether the statement is protected by the litigation privilege of Civil Code section 47, subdivision (b) (section 47). That assumption is not correct because the two statutes are not coextensive.

---

[6] An attorney has standing to bring a special motion to strike a cause of action arising from petitioning activity undertaken on behalf of the attorney's client. (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1056.)

(*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*) ["Notwithstanding [the] relationship between the litigation privilege and the anti-SLAPP statute . . . the two statutes are not substantively the same."]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737 [3 Cal.Rptr.3d 636, 74 P.3d 737]; *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1517, 1519 [68 Cal.Rptr.3d 230] ["Although the interpretation of language in Civil Code section 47 has been used to interpret similar language in the anti-SLAPP statute [citation], we reject the broad conclusion that conduct deemed communicative for purposes of Civil Code section 47 automatically qualifies as constitutionally protected speech under section 425.16."]; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 284 [67 Cal.Rptr.3d 190]; but see *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1467, fn. 3 [37 Cal.Rptr.3d 133] [decided prior to *Flatley*].)

Even so, the two statutes serve similar policy interests, and courts "look[] to the litigation privilege [Civ. Code, § 47] as an aid in construing the scope of section 425.16, subdivision [(e)(2)] with respect to the first step of the two-step anti-SLAPP inquiry . . . ." (*Flatley, supra*, 39 Cal.4th at p. 323; see *Briggs, supra*, 19 Cal.4th at p. 1115; *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 489; *Rohde, supra*, 154 Cal.App.4th at pp. 35–36; see also *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5 [39 Cal.Rptr.3d 547] (*Healy*) ["Both section 425.16 and Civil Code section 47 are construed broadly, to protect the right of litigants to ' "the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions." ' [Citations.]"].) Whether the Letter might be protected by section 47 thus informs our analysis, but does not resolve whether the Letter is a protected activity under section 425.16, subdivision (e)(2).[7]

As noted above, section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made *in connection with* an issue under consideration or review by a legislative, executive, or judicial body . . . ." (§ 425.16, subd. (e)(2), italics added.) As discussed *post*, communications in connection with anticipated litigation are considered to be " ' "under consideration or review by a . . . judicial body." ' " (*Flatley, supra*, 39 Cal.4th at p. 319.) We must therefore determine whether the Letter is a writing made "in connection

---

[7] If an allegedly defamatory statement is privileged under Civil Code section 47, then a plaintiff could not show a likelihood of success on the merits, the second step in the anti-SLAPP inquiry. (See *Healy, supra*, 137 Cal.App.4th at p. 6.) We do not reach that issue, however, because Neville offered no evidence in the trial court and makes no argument on appeal to establish that he is likely to succeed on the merits of his claim.

with" the anticipated litigation between Maxsecurity and Neville. (§ 425.16, subd. (e)(2).)

■ In *Paul v. Friedman* (2002) 95 Cal.App.4th 853 [117 Cal.Rptr.2d 82] (*Paul*), an attorney moved to strike causes of action asserted by a securities broker alleging that the attorney, in litigating a prior arbitration proceeding, had conducted an intrusive investigation into the securities broker's personal life and had disclosed to the broker's clients and others personal details—including details about the broker's financial affairs, spending habits, tax liabilities, and close personal relationship with another individual—that had no bearing on the alleged securities fraud at issue in the arbitration. (*Id.* at pp. 857–858, 866.) The attorney argued, inter alia, that his conduct was protected because it was undertaken "in connection with" the arbitration proceeding. (*Id.* at p. 865.) The Court of Appeal held that the attorney had failed to satisfy his threshold burden to show the activity was protected. (*Id.* at p. 868.) Section 425.16 "does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding. The statements or writings in question must occur in connection with 'an issue under consideration or review' in the proceeding." (95 Cal.App.4th at p. 866.) Statements that "bear[] no relationship to" or "ha[ve] nothing to do with the claims under consideration" in the litigation do not meet that standard. (*Ibid.*) The attorney's investigations into and disclosures of the broker's private information were irrelevant to proving or disproving the allegations pled in the arbitration proceeding. (*Id.* at pp. 867–868.) Thus, although the attorney's conduct might have been "in connection with" a *proceeding*, it was not—as section 425.16, subdivision (e)(2) requires—in connection with "an '*issue under consideration or review*' " in that proceeding. (95 Cal.App.4th at pp. 867, 868, italics added.)

In *Healy, supra*, 137 Cal.App.4th 1, a homeowner in a residential development denied the local homeowners association access across her property to abate a fire hazard caused by weed growth on an adjacent piece of land. The association sued the homeowner for injunctive and declaratory relief. The attorney for the association sent a letter to other residents of the development that stated, in pertinent part, " 'The Association is performing this weed abatement at an additional cost to the Association, primarily because of [*sic*] ingress and egress through the gate at the end of Villa Scencero is being prohibited by the owner of 6 Villa Scencero [the homeowner]. Please note, normal weed abatement is a standard part of the landscape maintenance contract expense. However, where ingress and egress is changed and more difficult, a cost is charged. This cost has a direct impact on operating expenses and assessments.' " (*Id.* at p. 4.) The homeowner filed a cross-complaint against the homeowners association for defamation, alleging the

attorney's statement falsely communicated to other residents of the development that the homeowner was responsible for causing the homeowners association to incur additional costs when, in fact, alternative avenues of ingress and egress to the subject property were available. The homeowners association moved to strike the homeowner's cross-complaint under the anti-SLAPP statute. The trial court denied the motion. (*Ibid.*)

The Court of Appeal reversed. "[A]n action for defamation falls within the anti-SLAPP statute," the court said, "if the allegedly defamatory statement was made in connection with litigation." (*Healy, supra*, 137 Cal.App.4th at p. 5.) "Thus, it has been established for well over a century that a communication is absolutely immune from any tort liability if it has ' "some relation" ' to judicial proceedings." (*Ibid.*) "Because one purpose of the letter," the court stated, "was to inform members of the association of pending litigation involving the association, the letter is unquestionably 'in connection with' judicial proceedings (§ 425.16, subd. (e)(2)) and bears ' "some relation" ' to judicial proceedings. [Citations.]" (*Id.* at pp. 5–6.) Accordingly, the court concluded, the homeowners association met its threshold burden of showing that its letter was petitioning activity protected by both the anti-SLAPP statute and the litigation privilege. (*Id.* at p. 6.) The Court of Appeal also held that because the letter was absolutely privileged, the homeowner could not, as a matter of law, show a probability of prevailing on her defamation claim. (*Ibid.*)

In *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043 [61 Cal.Rptr.3d 434] (*CSC*), the plaintiff was a company in the business of providing event staffing services. The plaintiff and one of its competitors (defendant Staff Pro) sued one another; the litigation was both protracted and contentious. (*Id.* at pp. 1047–1048.) While the litigation was pending, the president of Staff Pro, Meredith, sent an e-mail to nine of Staff Pro's clients in which he stated, among other things, that the plaintiff had paid ex-employees of Staff Pro to " 'make false statements in declarations [which] . . . were then presented to Staff Pro's clients in an effort to create doubt in Staff Pro's clients' minds.' " (*Id.* at p. 1050.) The purpose of the e-mail, Meredith declared, was to inform clients of the status of the litigation, " 'to give them some idea as to how their testimony and production of documents . . . had been used, to give these persons some level of comfort that it was unlikely any further testimony would be needed from them . . . and, lastly, to apologize for any disruption to their business that occurred as a result of being "dragged into" the [litigation] because of their connection to Staff Pro.' " (*Ibid.*) The plaintiff filed another action against Staff Pro and Meredith for, among other things, defamation based on Meredith's statements

in his e-mail. (*Id.* at pp. 1050–1051.) The trial court granted the special motion to strike of Staff Pro and Meredith pursuant to the anti-SLAPP statute. (*Id.* at p. 1051.)

■ The Court of Appeal affirmed. Citing *Healy, supra,* 137 Cal.App.4th at pages 5–6, the court held that Staff Pro and Meredith had met their burden to show that the e-mail was protected activity under section 425.16, subdivision (e)(2). (*CSC, supra,* 152 Cal.App.4th at pp. 1053–1054.) "Meredith's e-mail," the court said, ". . . constitutes a litigation update, which describes the parties' contentions and court rulings, and is directed to individuals who had some involvement in the parties' litigation." (*Id.* at p. 1055.) "The trial court therefore correctly concluded the e-mail falls within the parameters of section 425.16, subdivision (e)(2) in that it was made 'in connection with an issue under consideration or review by a . . . judicial body.' " (*Ibid.*) These cases stand for the proposition that a statement is "in connection with" litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.[8]

Cases construing the scope of the litigation privilege embodied in Civil Code section 47 have reached similar results. To be privileged under section 47, a statement must be "reasonably relevant" to pending or *contemplated* litigation. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 220 [266 Cal.Rptr. 638, 786 P.2d 365] [communication must have some "reasonable relevancy to the subject matter of the action"]; *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1058 [18 Cal.Rptr.3d 882] [litigation privilege protects "prelitigation communications involving the subject matter of the ultimate litigation"]; see also *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*); *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955 [56 Cal.Rptr.3d 477, 154 P.3d 1003]; *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1057; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361 [7 Cal.Rptr.3d 803, 81 P.3d 244]; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193–1196 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 148 [81 Cal.Rptr.2d 392] (*Proton*); *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29 [61 Cal.Rptr.2d 518] (*Edwards*).) The reasonable relevancy requirement of section 47 is analogous to the "in connection with" standard of section 425.16, subdivision (e)(2).

---

[8] Both *Healy, supra,* 137 Cal.App.4th 1, and *CSC, supra,* 152 Cal.App.4th 1043, concern pending litigation. As discussed below, however, section 425.16, subdivision (e)(2) may also protect prelitigation statements.

In *Knoell v. Petrovich* (1999) 76 Cal.App.4th 164 [90 Cal.Rptr.2d 162] (*Knoell*), for example, a landowner and her neighbor disputed the existence of an easement on the landowner's property. The landowner retained an attorney to extinguish the easement. The attorney wrote a demand letter to the neighbor stating that the deed granting the easement " 'may or may not be a forgery.' " (*Id.* at p. 167.) The attorney also wrote the Lompoc City Attorney stating that the landowner's position was that " 'the easement was obtained by fraud and deception . . . .' " (*Ibid.*) The land dispute was settled, but the neighbor thereafter sued the attorney for defamation and other torts. (*Id.* at pp. 167–168.) The Court of Appeal held that both the demand letter and the letter to the city attorney were absolutely privileged. The letters were sent in anticipation of litigation, and "were timely and directed to the easement dispute." (*Id.* at p. 171.)

In contrast, the court in *Proton, supra*, 69 Cal.App.4th 140, held that the statements at issue were not reasonably related to litigation and therefore were not protected by Civil Code section 47. In that case, an employee of a high technology company left the company to work for a competitor; the company became concerned that the employee improperly was soliciting its employees and customers. (69 Cal.App.4th at p. 143.) An attorney representing the company sent a letter to the chief executive officer of the employee's new employer stating that the new employer's " 'recent acts of unfair competition will not be tolerated.' " (*Ibid.*) In addition, the attorney falsely stated that the employee had been imprisoned " 'for repeatedly and violently assaulting his wife. . . .' " (*Id.* at pp. 143–144.) In fact, although the employee previously had been imprisoned, his crimes were vandalism and shooting at an unoccupied car. (*Id.* at p. 151.) The Court of Appeal held that the statement about the employee's purported wife beating was not privileged under section 47. Not only was the statement incorrect, but "any 'connection' between such a conviction and the civil unfair competition focus of [the attorney's] demand letter is, to be charitable about it, tenuous." (69 Cal.App.4th at p. 151.) The alleged acts of unfair competition were not crimes, and "one's proclivity to engage in such practices [unfair competition] is in no way, shape or form predictable by whether he (a) beats his wife (b) shoots at unoccupied cars, or (c) commits vandalism." (*Ibid.*)

This case is more closely analogous to *Healy, supra*, 137 Cal.App.4th at pages 5–6, *CSC, supra*, 152 Cal.App.4th at page 1055, and *Knoell, supra*, 76 Cal.App.4th at pages 167–168, than to *Paul, supra*, 95 Cal.App.4th at page 866, or *Proton, supra*, 69 Cal.App.4th at pages 143–144. The Letter related directly to Maxsecurity's claims for breach of contract and misappropriation of trade secrets against Neville. Neville was alleged to have misappropriated Maxsecurity's customer lists. The Letter was directed to Maxsecurity's current and former customers—persons whom Maxsecurity reasonably could believe had an interest in the dispute as potential witnesses to, or unwitting

participants in, Neville's alleged misconduct. The Letter constituted an attempt to prevent further misuse of Maxsecurity's proprietary information, and thereby mitigate Maxsecurity's potential damage. Unlike *Paul* and *Proton*, the Letter contained no statements of fact concerning Neville that were not based on or related to the allegations that formed the basis of Maxsecurity's claims. Thus, the Letter was "in connection with" the issues in Maxsecurity's lawsuit against Neville. (*CSC, supra*, 152 Cal.App.4th at p. 1055; *Healy, supra*, 137 Cal.App.4th at pp. 5–6.)

 That Chudacoff sent the Letter before Maxsecurity sued Neville does not mean it is not protected activity. Although one could read the language of section 425.16, subdivision (e)(2) to allude to pending litigation by referring to "an issue under consideration or review by a . . . judicial body," our Supreme Court has said, " '[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' " (*Briggs, supra*, 19 Cal.4th at p. 1115; see *Flatley, supra*, 39 Cal.4th at p. 322, fn. 11 [quoting *Briggs* in rejecting plaintiff's contention that prelitigation communications do not fall within the ambit of section 425.16]; *Rohde, supra*, 154 Cal.App.4th at p. 35; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 [52 Cal.Rptr.3d 712] [anti-SLAPP protection "applies not only to the filing of lawsuits, but extends to conduct that relates to . . . litigation, including statements made in connection with or in preparation of litigation"].) This position reflects that "courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.]" (*Kolar v. Donahue, McIntosh & Hammerton, supra*, 145 Cal.App.4th at p. 1537.) Accordingly, although litigation may not have commenced, if a statement "concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration' " (*Rohde, supra*, 154 Cal.App.4th at p. 37, quoting *Action Apartment, supra*, 41 Cal.4th at p. 1251) then the statement may be petitioning activity protected by section 425.16.

Neville, however, argues that *Edwards, supra*, 53 Cal.App.4th 15, holds that prelitigation statements are protected only if litigation is "imminent," and that in this case more than four months passed between the time the Letter was sent and the time Maxsecurity filed suit. In *Edwards*—which arose under Civil Code section 47, not under the anti-SLAPP statute—the court held that the litigation privilege attaches to prelitigation statements when "imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute, and not when a threat of litigation is made merely as a means of obtaining a settlement." (*Edwards*, at p. 36.) The court defined "imminent" to mean an "actual threat of impending litigation . . . ."

(*Id.* at p. 35.) The allegedly fraudulent statements at issue in *Edwards* were not privileged, the court held, because the defendants had failed to establish "anything more than the mere *possibility*" of litigation. (*Id.* at p. 39; see also *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1378–1379 [88 Cal.Rptr.2d 802].) The court in *Edwards* did not hold that the statements at issue were made too long before the filing of the lawsuit to constitute an "imminent" threat of litigation. Even if the court had so held, the statements at issue in *Edwards* were made more than five *years* before the lawsuits were filed, as opposed to the four *months* in this case.

The evidence before the trial court in this case established a threat of impending litigation. The Letter's reference line reads, "Maxsecurity v. Mark Neville, dba ABD Audio and Video." It is written on the letterhead of Chudacoff's law office, and states that "this office represents Maxsecurity in the above-matter [*sic*]." The Letter further states, "We have notified Mr. Neville of his breach and shall be aggressively pursue [*sic*] all available remedies." Chudacoff declared that he "undertook to represent Maxsecurity in its efforts to enforce the employment agreement" with Neville, and prepared the Letter at his client's request. Maxsecurity filed suit approximately four months after the Letter was written, with Chudacoff acting as counsel of record. (§ 425.16, subd. (b)(2).) Accordingly, *Edwards, supra,* 53 Cal.App.4th 15, does not assist Neville.

Neville contends that there is insufficient evidence that when Chudacoff wrote the Letter, Maxsecurity was contemplating litigation seriously and in good faith because Chudacoff submitted no direct evidence of his or his client's state of mind. The only reasonable inference from the evidence described above, however, is that Maxsecurity and Chudacoff were contemplating litigation against Neville seriously and in good faith when the Letter was written. (See *Action Apartment, supra,* 41 Cal.4th at p. 1251; *Rohde, supra,* 154 Cal.App.4th at p. 36.)

Relying upon *Herzog v. "A" Company, Inc.* (1982) 138 Cal.App.3d 656 [188 Cal.Rptr. 155] (*Herzog*), Neville asserts that the Letter could not have been sent in good faith because it was, in effect, an attempt to prevent Neville from competing with Maxsecurity in violation of Business and Professions Code section 16600. Section 16600 declares void "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind . . . ." The Letter did not constitute a covenant not to compete, nor did it accuse Neville of violating a covenant not to compete. The Letter accused Neville of improperly soliciting Maxsecurity's

customers. Section 16600 does not authorize employees to compete with former employers by stealing their confidential customer information. (See *Board of Trustees of Leland v. Roche Molecular* (N.D.Cal. 2007) 487 F.Supp.2d 1099, 1115 [§ 16600 permits enforcement of agreement to the extent necessary to protect trade secrets and prevent unfair competition]; *Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4th 1425, 1429–1430 [7 Cal.Rptr.3d 427]; *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1150 [82 Cal.Rptr.2d 143] ["[a]cts of solicitation of the former employer's customers and the misuse of confidential information are acts of unfair competition that may be enjoined"].) Neither section 16600 nor *Herzog* is relevant here.

■ We also reject Neville's argument that the Letter is not protected because it was addressed to Maxsecurity's customers, against whom Maxsecurity had no claim, rather than to Neville. Although many anti-SLAPP cases involving prelitigation communications concern demand letters or other statements to adverse parties or potential adverse parties (e.g., *Flatley, supra,* 39 Cal.4th at pp. 307–309; *Rohde, supra,* 154 Cal.App.4th at pp. 36–37; *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 918–919 [20 Cal.Rptr.3d 385]), there is no such requirement in the text of section 425.16, subdivision (e)(2). That provision has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made "in connection with" pending or anticipated litigation. (E.g., *CSC, supra,* 152 Cal.App.4th at p. 1055 [e-mail to customers accusing competitor of litigation-related misconduct]; *Healy, supra,* 137 Cal.App.4th at pp. 5–6 [letter from homeowners association to nonparty association members]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830] [letter to celebrity participants in charitable recording preparatory to lodging complaint with state Attorney General]; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 821–822 [33 Cal.Rptr.2d 446] [statements to nonparties soliciting contributions to litigation fund], disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.)

■ Chudacoff satisfied his threshold burden to show that his conduct fell within the ambit of section 425.16, subdivision (e)(2). Neville made no showing below, and makes no argument on appeal, that he demonstrated a probability of prevailing on his claims against Neville. (§ 425.16, subd. (b)(1).) As the statement at issue is protected under section 425.16, subdivision (e)(2), the trial court properly granted Chudacoff's special motion to strike.

## DISPOSITION

The order is affirmed. Chudacoff is to recover his attorney fees and costs on appeal pursuant to section 425.16, subdivision (c), in amounts to be determined by the trial court. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 686 [43 Cal.Rptr.3d 148].)

Turner, P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2008, S162917.