******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ROBERT J. SICIGNANO, JR. *v.*
# BARBARA PEARCE ET AL.
## (AC 46370)

Bright, C. J., and Moll and Prescott, Js.

*Syllabus*

The plaintiff attorney, who represented a will beneficiary in a probate matter, appealed from the judgment of the trial court dismissing his complaint against the defendants, a residuary beneficiary of the will, and its chief executive officer, who had sent a private email to other attorneys involved in the litigation that the plaintiff claimed was defamatory. The plaintiff claimed that the court improperly granted the defendants' special motions to dismiss under the anti-SLAPP statute (§ 52-196a) after determining that his complaint was based on the defendants' exercise of their constitutional right to petition the government on a matter of public concern. *Held*:

The trial court properly concluded that the email was a protected communication made "in connection with" an issue under review by a judicial body pursuant to § 52-196a (a) (3) (A) that related to substantive issues in the litigation and was directed to persons having some interest in that litigation.

The trial court correctly determined that § 52-196a (a) (3) (A) did not require that the email occur during an official proceeding to constitute protected communication.

The trial court properly concluded that the email's content was a matter of public concern that related to economic or community well-being pursuant to § 52-196a (a) (1) (B).

This court declined to review the plaintiff's unpreserved claim that the trial court incorrectly determined that he had failed to demonstrate probable cause to believe he would prevail on the merits of his complaint.

The trial court did not violate the separation of powers doctrine or the ex post facto clause of the United States constitution when it considered California law in interpreting and applying § 52-196a.

Argued May 20—officially released October 15, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Stewart, J.,* granted the defendants' special motions to dismiss and rendered judgment thereon,

from which the plaintiff appealed to this court. *Affirmed.*

*John Kardaras*, for the appellant (plaintiff).

*Todd R. Michaelis*, with whom were *Eric J. Herst* and, on the brief, *Stephen J. Conover*, for the appellee (named defendant).

*Michelle M. Seery*, with whom was *Michael T. McCormack*, for the appellee (defendant Connecticut Hospice, Inc.).

*Opinion*

BRIGHT, C. J. The plaintiff, Robert J. Sicignano, Jr., appeals from the judgment of the trial court dismissing his complaint against the defendants, Barbara Pearce and Connecticut Hospice, Inc. (Connecticut Hospice), pursuant to Connecticut's anti-SLAPP[1] statute, General Statutes § 52-196a. On appeal, the plaintiff claims that the trial court erred by: (1) "concluding [that] the plaintiff's claims against the defendants fall within the ambit of protected constitutional conduct as defined by . . . § 52-196a"; (2) "adopting language in the California anti-SLAPP statute and California case law not contained in the Connecticut anti-SLAPP statute in violation of the separation of powers under the constitution"; and (3) "adopting definitions of language in the Connecticut anti-SLAPP statute based upon California case law [interpreting] the California statute in violation of the rule against ex post facto legislation as applied to the

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.     , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

courts through the due process clause."[2] We affirm the judgment of the trial court.[3]

The following facts, either as set forth by the court in its memorandum of decision[4] or as undisputed in the record, and procedural history are relevant to our resolution of this appeal.[5] "The plaintiff, who is both a Connecticut attorney and a licensed certified public

---

[2] Although styled as distinct constitutional claims in the plaintiff's principal appellate brief, which is not a model of clarity, the plaintiff's separation of powers and ex post facto claims essentially challenge the court's construction and application of § 52-196a, which we address in part I of this opinion. Nevertheless, insofar as these claims are distinct from the statutory construction claim, we briefly address the alleged constitutional violations together in part II of this opinion.

[3] The plaintiff argues that the judgment of dismissal also is "reversible under the plain error doctrine" pursuant to Practice Book § 60-5, due to the court's failure to apply the correct law. Given that the plaintiff's claims challenging the court's construction of § 52-196a are preserved, we have no reason to resort to the plain error doctrine, which "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, *although unpreserved,* are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Emphasis added; internal quotation marks omitted.) *State* v. *Taveras*, 219 Conn. App. 252, 269, 295 A.3d 421, cert. denied, 348 Conn. 903, 301 A.3d 527 (2023).

[4] The court noted that it considered the plaintiff's complaint, including the exhibits appended thereto, the plaintiff's affidavit and accompanying exhibits in opposition to the defendants' motion to dismiss, and Connecticut Hospice's affidavits in support of its motion to dismiss. See General Statutes § 52-196a (e) (2).

[5] Pearce notes in her appellate brief that the plaintiff's "statement of facts contains a voluminous number of 'facts' which are not supported by citations to the record in violation of [Practice Book §] 67-4 (d), and this failure is grounds for [the] Appellate Court to refuse to consider [this] appeal." Connecticut Hospice similarly argues that the plaintiff "misrepresents as fact that [he] is a party to" the settlement agreement and "asserts as facts other matters that are not contained in the record" while "omit[ting] mention of other facts that he did allege in his complaint . . . ." (Internal quotation marks omitted.) We acknowledge that there are some facts alleged in the plaintiff's principal brief on appeal that are not supported by references to the record and for which our own review of the record has not uncovered any such support. Putting the accuracy of the plaintiff's recitation of the facts and the defendants' characterization thereof aside, our review is based on the pleadings and exhibits in the record.

accountant, was counsel to the executrix in the matter of *In re Estate of Spirito* while it was pending in the Wallingford Probate Court. The executrix, a grandniece of the decedent, was one of four specific beneficiaries of the will. Connecticut Hospice, a charitable corporation, was the sole residuary beneficiary of the will. At all times relevant for this [appeal], Pearce, a Connecticut licensed attorney, was the chief executive officer of Connecticut Hospice. During the pendency of the probate proceedings, Connecticut Hospice was represented by Attorney Andrew Knott and Attorney Gregory Pepe.

"The original will provided that each of the four beneficiaries would receive $50,000 and that Connecticut Hospice would receive the residue of the estate. While the matter was pending before the Probate Court, the executrix found an unsigned codicil that the decedent mailed to his previous counsel. That unsigned codicil increased the bequests to each of the beneficiaries from $50,000 to $100,000, thereby decreasing the share of the estate that would go to Connecticut Hospice. After much back and forth in 2018 and 2019, the individual beneficiaries moved to compel a settlement they claimed they had reached regarding the codicil. This resulted in a hearing in the Probate Court pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993). [The plaintiff alleges that], [a]t that hearing[6]

---

[6] In its memorandum of decision, the trial court indicated that Pearce made this statement at the hearing held pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993). The plaintiff's principal brief on appeal, however, states that this statement was made "on September 24, 2019, prior to the start of [the] hearing before the Probate Court . . . ." Consequently, the plaintiff argues, for the first time in his reply brief, that the court incorrectly stated that fact: "Obviously [Pearce] did not threaten the plaintiff and counsel *during* the hearing in the presence of the probate judge." (Emphasis added.) Nevertheless, the plaintiff's complaint suggests otherwise, as it alleges that, "[o]n September 24, 2019, a hearing was held before the Probate Court, *which hearing became quite contentious when* [*Pearce*] *stated* that she

. . . Pearce stated that she wanted to 'extract a pound of flesh.'

"After that hearing, the parties executed a document entitled Settlement Agreement, Mutual Distribution Agreement and Release [(settlement agreement)]. The Probate Court approved that agreement on October 31, 2019. The [settlement] agreement provided for distributions of an additional $23,000 to each of the individual beneficiaries and an interim distribution of $800,000 to Connecticut Hospice. It also included a nondisparagement clause that prevented the 'parties' to the agreement from making '[any negative or] disparaging oral or written statements about the other parties to this Settlement Agreement [to any parties who are not a party to the Settlement Agreement' and from making 'any false or misleading statements about any other party or their career, reputation, business finances, salaries, or clients].' The . . . agreement [identified the parties as] Connecticut Hospice and the individual beneficiaries.[7] Pearce signed the [settlement] agreement, but only in her capacity as chief executive officer of Connecticut Hospice. The plaintiff did not sign the [settlement] agreement.

"Connecticut Hospice's counsel [Pepe] executed and filed a waiver of notice and hearing for final distribution

wanted to 'extract a pound of flesh.' " (Emphasis added.) It appears that the trial court reasonably read the plaintiff's complaint as alleging that the threat was made at, or at least in relation to, that hearing, and there is no evidence in the record to support a contrary conclusion. Regardless, any uncertainty as to when the statement was made does not alter our resolution of this appeal, as we conclude that the plaintiff inadequately briefed, and thus abandoned, any claim on appeal that Pearce's alleged statement on September 24, 2019, does not fall within the scope of conduct protected under the anti-SLAPP statute. See part I A of this opinion.

[7] We find no support in the record for the plaintiff's argument that the phrase "any other party" in the nondisparagement clause "was understood to include counsel to the parties," including himself as counsel to one of the individual beneficiaries. The agreement expressly and unambiguously identifies the only parties to the agreement as Connecticut Hospice, the fiduciary, and four specific beneficiaries under the Spirito will.

in January, 2020. The next month, Connecticut Hospice's other counsel, [Knott], filed a petition to remove the fiduciary. That petition was denied by the Probate Court at a hearing on March 3, 2020.

"[The plaintiff alleges that], '[a]t subsequent hearings,' Connecticut Hospice's counsel 'began knowingly and/or recklessly making false claims before the Probate Court concerning allegations of "irregularities [and] missing funds," [and] falsely and maliciously accusing the plaintiff of "borrowing from the funds" of the estate without any evidence whatsoever.' On or about April 9, 2020, Pearce sent an email to the individual beneficiaries' counsel that stated in part: 'I guess that means that the rumor I heard that [the plaintiff] was "borrowing" from the funds isn't true.'

"In November, 2020, after a hearing about the plaintiff's attorney's fees, the plaintiff, counsel for the individual beneficiaries, and [Pepe] held a settlement conference. [The plaintiff alleges that] [Pepe] demanded an additional distribution of $80,000 to Connecticut Hospice prior to the approval of the financial report. The plaintiff alleges that this payment would have been precluded by language in the agreement that any subsequent distribution after the interim distribution of $800,000 would be made after the conclusion of the final accounting and approval by the Probate Court. [The plaintiff further alleges that] [Pepe] then threatened to grieve the plaintiff if he did not make the $80,000 disbursement. On November 30, 2020, the plaintiff e-filed a letter with the Probate Court, requesting sanctions against [Pepe] for his threat to grieve the plaintiff and against Pearce for her threat to 'extract a pound of flesh.'

"On December 18, 2020, Pearce, in her capacity as chief executive officer of Connecticut Hospice, filed a grievance against the plaintiff, [which the plaintiff

alleges contained false statements]. In that grievance, Pearce complained about the fees charged by the plaintiff, the delays in filing accountings with the Probate Court, and the failure to pay Connecticut Hospice at least $100,000 of the additional $200,000 it expected to receive after the interim payment of $800,000.

"In a separate grievance brought by the plaintiff against Pearce, the [grievance] panel found probable cause that Pearce had engaged in misconduct when she sent the email referring to the rumors about 'borrowing from the [e]state funds' and when she filed the grievance against the plaintiff.

"[The plaintiff alleges that], [i]n December, 2020, the defendants contacted the Office of the Attorney General, which filed another appearance in the Probate Court [in reliance on the defendants' false claims].

"[The plaintiff further alleges that], [a]fter the plaintiff and the executrix consulted with Attorney Paul Knierim in January, 2021, [Knierim] [allegedly] called the executrix and then held a conference call with both the executrix and the plaintiff to tell them that [Knott] was alleging that funds were missing from the estate. . . . Later that same month, [Knott] stated in a letter to the Probate Court that Connecticut Hospice had no other objections to the final account other than the plaintiff's attorney's fees.

"In addition to the grievance he filed against Pearce, the plaintiff also filed a grievance against [Knott]. The [grievance] panel found probable cause that [Knott] engaged in misconduct, including allegations that the plaintiff may have been involved in forging a signature and 'inaction' in connection with his client's 'comments/ innuendos' as to the plaintiff borrowing estate funds. The litigation at issue in the grievance was the *In re Spirito Estate* Probate Court matter.

"[Finally, the plaintiff alleges that], [o]n May 14, 2021 [Pepe] sent an ex parte communication to the Probate Court that ultimately caused the presiding probate judge to recuse himself." (Footnotes added; footnote in original.)

The plaintiff brought the underlying action against the defendants in September, 2022. In the operative five count complaint, the plaintiff alleged that the defendants' conduct during the pendency of the underlying probate matter constituted breach of the settlement agreement, defamation, defamation per se, fraud, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

The defendants filed separate special motions to dismiss the action pursuant to § 52-196a (b).[8] In their accompanying memoranda of law, the defendants claimed that the plaintiff's complaint is based on the exercise of their right of free speech and right to petition the government in connection with a matter of public concern within the meaning of § 52-196a (a) and that, because the complaint is barred by Connecticut's absolute litigation privilege, the plaintiff could not satisfy his burden to show that there was probable cause that he would prevail on the merits of his complaint pursuant to § 52-196a (e) (3). The defendants also requested attorney's fees pursuant to § 52-196a (f) (1).[9]

_____

[8] General Statutes § 52-196a (b) provides: "In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim."

[9] General Statutes § 52-196a (f) (1) provides: "If the court grants a special motion to dismiss under this section, the court shall award the moving party costs and reasonable attorney's fees, including such costs and fees incurred in connection with the filing of the special motion to dismiss."

The plaintiff filed an objection to the defendants' special motions to dismiss, to which Connecticut Hospice filed a reply. In his memorandum of law in support of his objection to the motions, the plaintiff argued that the defendants' alleged conduct did not constitute the exercise of the defendants' rights to petition the government. He also asserted that his complaint is not barred by the litigation privilege because (1) the complaint is not based on the defendants' statements and conduct during a proceeding in the Probate Court, and (2) "[t]he defendants' statements and conduct fall under an exception to absolute immunity for causes of action alleging an improper use of the judicial system." (Internal quotation marks omitted.)

On January 19, 2023, following a hearing, the court issued a memorandum of decision granting the defendants' special motions to dismiss. In its analysis, the court identified the defendants' conduct and communications as alleged in the plaintiff's complaint. Specifically, as to Pearce, individually or on behalf of Connecticut Hospice, the court identified the following conduct and communications: "Pearce's statement . . . that she wanted to 'extract a pound of flesh'; Pearce's April 9, 2020 email to the individual beneficiaries' counsel that stated in part: 'I guess that means that the rumor I heard that [the plaintiff] was "borrowing" from the funds isn't true'; and Pearce's filing of a grievance against the plaintiff." As to communications made by counsel on behalf of Connecticut Hospice, the court highlighted the following: "Knott's filing of a petition to remove the fiduciary; counsel's making false claims of irregularities and missing funds and accusing the plaintiff of borrowing from the funds of the estate 'at subsequent hearings' before the Probate Court; [Pepe's] demand for $80,000 to be paid to Connecticut Hospice before the approval of the final accounting and his threat to grieve the plaintiff if the $80,000 was not paid;

counsel's contact with the Office of the Attorney General that caused it to file another appearance with the Probate Court; [Knott's] statement to [Knierim] that funds were missing from the estate [Knott's] allegation that the plaintiff may have been involved in forging a signature and[Knott's] inaction in response to his client's comments or innuendos about the plaintiff's borrowing estate funds; and [Pepe's] sending an ex parte letter to the Probate Court."

The court determined that all of the communications alleged in the plaintiff's complaint "were [made] in connection with a matter of public concern" as defined in § 52-196a (a)[10] because they "related to a charitable organization that was named as the sole residual beneficiary receiving its share of an estate and [to] the possible actions of the plaintiff and his client that might have interfered with that organization's rights under the will." As to the statements that the plaintiff was borrowing estate funds or was responsible for irregularities or missing funds, the court found that they also "raised matters of public concern" because "[p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern" and because "the public has an interest in being informed of the outcome of disciplinary proceedings involving attorneys licensed to practice law in this state." (Internal quotation marks omitted.) See *Gleason* v. *Smolinski*, 319 Conn. 394, 415, 125 A.3d 920 (2015) (noting that crimes are matter of public concern); *Elder* v. *Kauffman*, 204 Conn. App. 818, 830 n.3, 254 A.3d 1001 (2021) (noting that there is public interest in disciplinary proceedings).

---

[10] General Statutes § 52-196a (a) provides in relevant part: "As used in this section: (1) 'Matter of public concern' means an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . ."

As to the particular constitutional right at issue, the court concluded that only some of the communications constituted exercises of the defendants' right of free speech as defined in § 52-196a (a) (2),[11] but it nonetheless concluded that all the communications constituted exercises of the defendants' right to petition the government "in connection with an issue under consideration by a judicial body" within the meaning of § 52-196a (a) (3) (A).[12] At the outset of its analysis, the court noted that "[t]he questions raised by the parties' dispute over the right to petition the government definition [were] (1) whether 'in connection with' requires that the communications actually occur during a Probate Court hearing, and (2) whether that same language requires that the communications must be explicitly about 'the issue under consideration or review.' "

As to the first issue, the court concluded that the phrase "communication in connection with an issue under consideration or review by a . . . judicial . . . body" in § 52-196a (a) (3) (A) "does not require that the communication happen during a hearing." The court noted that its conclusion was "consistent with Connecticut case law on the litigation privilege, which construes

---

[11] General Statutes § 52-196a (a) (2) provides in relevant part: " 'Right of free speech' means communicating, or conduct furthering communication, in a public forum on a matter of public concern . . . ."

The court concluded that the email from Pearce to the individual beneficiaries' counsel, the in-person conversations, and the phone calls among lawyers during the probate litigation "were not made in a public forum" because they "were private communications sent from one individual to another" rather than "freely transmitted to a large number of people and . . . accessible to the public." The court noted, however, that its conclusion did "not foreclose the possibility that these communications were exercises of the defendants' rights to petition the government."

[12] General Statutes § 52-196a (a) provides in relevant part: "(3) 'Right to petition the government' means (A) communication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body . . . ."

'judicial proceeding' 'liberally to encompass much more than civil litigation and criminal trials.' "[13]

As to the second issue, the court noted that, although its research revealed no relevant Connecticut case law regarding whether the communications must be explicitly about the "issue under consideration or review"; General Statutes § 52-196a (a) (3) (A); it had found several cases from courts in California applying a provision in its anti-SLAPP statute that is "almost identical to § 52-196a (a) (3)." See Cal. Code Civ. Proc. § 425.16 (e) (2).

The court relied on *Neville* v. *Chudacoff*, 160 Cal. App. 4th 1255, 1266, 73 Cal. Rptr. 3d 383 (2008), review denied, California Supreme Court, Docket No. S162917 (June 11, 2008), in which the California Court of Appeals held that "a statement is 'in connection with' litigation under [California's anti-SLAPP statute] if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." Noting that the test articulated in *Neville* "is consistent with Connecticut case law," the court applied it in the present case and concluded that "the communications at issue here were made 'in connection with an issue under consideration or review by a . . . judicial or other governmental body.' All of the communications, including

---

[13] Additionally, the court concluded that, "even if Pearce's statements in the grievance that she filed against the plaintiff were not 'in connection with' the Probate Court proceeding, they were 'in connection with' an issue under consideration by another judicial body—the grievance panel." See, e.g., *Carter* v. *Bowler*, 211 Conn. App. 119, 125, 271 A.3d 1080 (2022) (holding "that the statewide bar counsel's review of complaints of attorney misconduct is quasi-judicial in nature under Connecticut law"); *Cohen* v. *King*, 189 Conn. App. 85, 90, 206 A.3d 188 (2019) (concluding that "[a]n attorney who is the subject of a grievance proceeding is a party to a quasi-judicial proceeding, and, therefore, relevant statements made by the attorney are shielded by the litigation privilege"), cert. denied, 336 Conn. 925, 246 A.3d 986 (2021); see also *Noble* v. *Hennessey*, Docket No. CV-20-6045166-S, 2021 WL 830014, *12 (Conn. Super. January 12, 2021) (filing grievance complaint constitutes petitioning government).

those that alleged that the plaintiff was borrowing funds or that funds were missing from the estate, relate to the substantive issues in [the probate matter] and were directed to persons having some interest in those probate proceedings." Accordingly, the court held that the defendants met their burden under the statute, thereby shifting the burden to the plaintiff to set "forth with particularity the circumstances giving rise to the complaint . . . and [to demonstrate] to the court that there is probable cause, considering all valid defenses, that [he would] prevail on the merits of the complaint . . . ." General Statutes § 52-196a (e) (3).

As to the plaintiff's burden, the court concluded that the plaintiff's breach of contract, fraud, and CUTPA counts were legally insufficient because he failed to plead essential elements of those causes of action. In particular, the court concluded that the plaintiff lacked standing to sue for breach of the settlement agreement because he did not, and could not, allege that he was a party to it. As to his fraud count, the court concluded that the plaintiff failed to allege "that any of [the defendants'] communications . . . were made to him, that he relied on any of those communications, or that he suffered harm as a result of that reliance." Finally, as to his CUTPA count, the court found that, even if the plaintiff could allege an unfair or deceptive act or practice that caused him to suffer an ascertainable loss, "he could not allege the trade or commerce element" because, inter alia, "the practice of law is not considered to be [a] trade or commerce, and attorneys may only be held liable under CUTPA for the 'entrepreneurial' aspects of their practice." In addition, the court concluded that "all five of the counts . . . are barred by the defense of absolute immunity based on the litigation privilege" because all of the communications alleged in the plaintiff's complaint "occurred in statements during Probate Court hearings, in filings made [in] the Probate

Court, and in emails or phone calls with other lawyers and the Office of the Attorney General."[14] The court reasoned that the litigation privilege is not limited to "hearings in court when the judge is on the bench" but also applies to "communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding." (Internal quotation marks omitted.)

After noting that "[t]he privilege applies if the statement has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it," the court reasoned that, "[e]ach of the communications here, including those that alleged that the plaintiff had borrowed funds from the estate or that funds were missing, all had some reference to the estate that was the subject of the probate litigation." For that reason, the court concluded that all of the alleged communications are protected by the litigation privilege and that, consequently, the plaintiff had failed to demonstrate a likelihood of success on the merits of his complaint.[15] Accordingly, the court dismissed the complaint and

[14] The court noted that "[t]he one possible exception would be the grievance filed by Pearce, but that, too, was part of a judicial proceeding," given this court's holding in *Carter* v. *Bowler*, 211 Conn. App. 119, 125, 271 A.3d 1080 (2022). See footnote 13 of this opinion.

[15] The court also rejected the plaintiff's argument that the defendants' statements fall under an exception to the litigation privilege for causes of action alleging an improper use of the judicial system. The court explained: "In those situations where a defendant is being sued for words used in a judicial proceeding, our courts have applied the privilege and dismissed the action. By contrast, where a defendant is being sued for causes of action such as abuse of process or vexatious litigation because they made improper use of the judicial system, our courts have declined to apply absolute immunity. . . . The complaint in this case does not include any causes of action that challenge the underlying purpose of the probate matter. Instead, each cause of action is based on the communications made by Connecticut Hospice's lawyers and by Pearce." (Citations omitted.) On appeal, the plaintiff does not challenge the court's conclusion in this regard.

invited the defendants to submit affidavits of their attorney's fees and costs.[16]

The plaintiff filed a motion to reargue and reconsider the dismissal, asserting that "the court's decision deprive[d] [him] of his due process rights by relying upon and adopting California statutory language and case law . . . [on] which [he] could not rely . . . [at the] time of filing the complaint and [which he had] no opportunity to refute by brief or oral argument." In a written order denying the plaintiff's motion, the court stated: "The plaintiff's motion to reargue does not identify any factual mistakes or inconsistencies with the court's decision. . . . Instead, [he] argues that he should be allowed to do additional research because the court relied on other states' anti-SLAPP case law . . . . To determine whether the communications were within the scope of [§ 52-196a], the court had to construe the statutory definitions. Because Connecticut's anti-SLAPP statute was so recently enacted, Connecticut courts routinely refer to other states' case law, including California and Nevada, to interpret the Connecticut statute. None of this should have been a surprise to the plaintiff. Nothing in the plaintiff's motion to reargue demonstrates that it was incorrect for the court to rely on this out-of-state case law or that there is any controlling authority that contradicts the case law on which the court relied. Therefore, the motion to reargue is denied."[17] This appeal followed.[18]

---

[16] The defendants separately filed affidavits of attorney's fees on February 9, 2023, which they subsequently supplemented. The court, *Stewart*, *J.*, issued a memorandum of decision on June 14, 2023, awarding Connecticut Hospice attorney's fees of $33,400 and costs of $2469.52, and awarding Pearce attorney's fees of $20,875.

[17] The plaintiff's appeal form indicates that he also appeals from the court's denial of his motion to reargue. In his principal appellate brief, however, the plaintiff does not challenge the court's denial of his motion to reargue.

[18] On November 24, 2023, the defendants filed a joint motion to dismiss this appeal for the plaintiff's alleged "repeated failure to file papers within deadlines . . . ." The plaintiff objected to the motion, asserting that he "has

I

The plaintiff first claims that the court improperly concluded that his "claims against the defendants fall within the ambit of protected constitutional conduct as defined by . . . § 52-196a." More specifically, the plaintiff claims that the court incorrectly concluded that the defendants' conduct constituted the exercise of their right to petition the government in connection with a matter of public concern within the meaning of § 52-196a and that the plaintiff failed to satisfy his burden of demonstrating that there is probable cause that he would prevail on the merits of his complaint. We address each subclaim in turn.

A

First, the plaintiff claims that the court incorrectly concluded that the defendants satisfied "their threshold burden of showing by a preponderance of the evidence that the plaintiff's suit was based on the defendants' exercise of their state or federal constitutional rights in connection with a matter of public concern."

On appeal, the plaintiff does not address all of the conduct that was the basis for his complaint in the underlying action. Although he argues that "not all the conduct on which [his claims] are based . . . involve" protected communications, his arguments in his principal appellate brief focused exclusively on Pearce's private email that stated: "I guess that means that the rumor I heard that [the plaintiff] was 'borrowing' from the funds isn't true." Thus, we consider any claim as to conduct other than Pearce's email abandoned.[19]

complied with the rules and orders of this court and has met all deadlines . . . ." On January 17, 2024, this court denied the motion to dismiss.

[19] Despite the narrow focus of his arguments in his principal appellate brief, during oral argument before this court, the plaintiff's counsel insisted that he was challenging the trial court's judgment as to all of the defendants' alleged conduct. The plaintiff's principal brief simply does not support such a statement, as it provides no analysis of any of the defendants' conduct other than Pearce's email. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the

issue properly. . . . Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." (Internal quotation marks omitted.) *Kawecki* v. *Saas*, 132 Conn. App. 644, 646 n.2, 33 A.3d 778 (2011).

Furthermore, the defendants contend that the plaintiff's claims are inadequately briefed or were raised for the first time in the plaintiff's reply brief and that this court should therefore decline to review them. We agree that the plaintiff has failed to provide meaningful analysis of the issues raised on appeal, as his entire argument section consists of conclusory assertions without analysis and with minimal citations from the record. See, e.g., *Estate of Rock* v. *Commission on Human Rights & Opportunities*, 323 Conn. 26, 33, 144 A.3d 420 (2016) ("[c]laims are . . . inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record" (internal quotation marks omitted)). Notwithstanding the inadequacy of the plaintiff's brief, we exercise our discretion to review the claims raised in his principal appellate brief challenging the trial court's construction and application of the recently enacted anti-SLAPP statute to Pearce's email, which involves a question of law subject to our plenary review. See, e.g., *Avon* v. *Sastre*, 224 Conn. App. 155, 169 n.7, 312 A.3d 40 ("[w]e agree with the commission that the claim was inadequately briefed; however, while we are not *required* to review an issue that has not been adequately briefed, in the interest of thoroughness in explaining why the log is a public record under the act and in our plenary review, we will address the relation between the log and the public's business" (emphasis in original)), cert. denied, 349 Conn. 905, 312 A.3d 1058 (2024).

Nevertheless, we decline to consider arguments that the plaintiff raised for the first time in his reply brief. See *State* v. *Griffin*, 217 Conn. App. 358, 375 n.9, 288 A.3d 653 ("it is well established that we do not entertain arguments raised for the first time in a reply brief"), cert. denied, 346 Conn. 917, 290 A.3d 799 (2023). "Arguments must be raised in an appellant's original brief . . . so that the issue as framed . . . can be fully responded to by the appellee in its brief, and so that [an appellate court] can have the full benefit of that written argument." (Internal quotation marks omitted.) *Benjamin* v. *Corasaniti*, 341 Conn. 463, 476 n.8, 267 A.3d 108 (2021).

In his reply brief, the plaintiff argued for the first time that the court erred in concluding that he did not establish probable cause that he would prevail on the merits because he was a third-party beneficiary to the settlement agreement. He also argued that Pearce's statement that she would "extract a pound of flesh" is not an exercise of her right to petition the government in connection with a matter of public concern. In addition, the plaintiff rephrased his ex post facto claim in his reply brief, arguing that the "court erred by violating the due process clause of the fourteenth amendment requirement of fair notice as to what conduct is prohibited when it adopted case law of sister jurisdictions and tests used by California courts to punish the plaintiff by the award of attorney's fees." In support of that argument, the plaintiff cited the vagueness doctrine, which he did not apply in his principal appellate brief. During oral argument before this court, the plaintiff's counsel suggested that the ex post facto argument in his principal brief

With respect to Pearce's email, we understand his claim to be that the court misconstrued § 52-196a (a) in concluding that Pearce's email constituted a communication in connection with (1) an issue under consideration by a judicial body pursuant to § 52-196a (a) (3) (A), and (2) a matter of public concern.

The plaintiff argues in cursory fashion that "[a] private email does not fit within the ambit of the protected constitutional conduct as defined by the anti-SLAPP statute [and] is not connected to a matter of public concern." (Internal quotation marks omitted.) He further argues that, "[t]o the extent that the trial court's decision can be interpreted as adopting the defendants' position equating the knowingly false allegation in a private email that the plaintiff was 'borrowing from the funds' to the exercise of a constitutional right in connection with a matter of public concern, it is legally erroneous. The trial court cited no case supporting such a novel proposition, nor is there any credible argument that the defendants' alleged conduct qualifies as protected speech or petitioning activity." (Internal quotation marks omitted.)

As previously noted in this opinion, the plaintiff alleged that Pearce "sent an email to Attorney David Crotta, Jr. [who represented the individual beneficiaries in the probate matter], which read in part, 'I guess that means that the rumor I heard that [the plaintiff] was "borrowing" from the funds isn't true.' " The subject line of the email is "RE: update on spirito estate," and it was sent in response to Crotta's update about the status of the administration of the Spirito estate.

and the due process argument in his reply brief are one and the same. To the extent, however, that the plaintiff argues in his reply brief that § 52-196a violates the due process clause because it is unconstitutionally vague, that argument was raised for the first time in his reply brief. Accordingly, we decline to consider these belated arguments. See *Benjamin* v. *Corasaniti*, supra, 341 Conn. 476 n.8.

We begin our analysis with the applicable standard of review and relevant legal principles. "[W]hether conduct falls within the province of a statute is a matter of statutory construction presenting a question of law over which our review is plenary." *Chapnick* v. *DiLauro*, 212 Conn. App. 263, 269–70, 275 A.3d 746 (2022).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Deer* v. *National General Ins. Co.*, 225 Conn. App. 656, 670–71, 317 A.3d 19 (2024).

In accordance with § 1-2z, we begin with the relevant statutory language. Section 52-196a (e) (3) provides in relevant part: "The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern . . . ."

In order to satisfy this initial burden, the moving party must show that the complaint is based on the exercise of one of the constitutional rights defined in § 52-196a (a) and "that the exercise of that right is in connection with a 'matter of public concern,' as defined in § 52-196a (a) (1)." *Robinson* v. *V. D.*, 346 Conn. 1002,1009, 293 A.3d 345 (2023).

Our reading of the plain language of § 52-196a (a) confirms the trial court's conclusions that Pearce's email was a communication "in connection with" (1) an issue under consideration or review by the Wallingford Probate Court and (2) a matter of public concern.

1

The statute defines "[r]ight to petition the government" as any "communication *in connection with* an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body . . . ." (Emphasis added.) General Statutes § 52-196a (a) (3) (A).

We agree with the trial court that the phrase "in connection with" in § 52-196a (a) (3) (A) does not require that the conduct occur during an official proceeding. In *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 983 A.2d 1 (2009), our Supreme Court interpreted the same phrase in a different statutory context. As in the present case, the statute at issue in *Key Air, Inc.*, did not define the phrase "in connection with," and our Supreme Court therefore looked to the common understanding of the phrase as expressed in a dictionary. Id. The court explained that "[t]he dictionary defines the word 'connection' as, inter alia, a 'causal or logical relation or sequence . . . contextual relation or association . . . [or] relationship in fact. . . .' Accordingly, the plain meaning of the statutory phrase 'in connection with' necessarily includes *any* factual, contextual or causal relationship. . . .

Had the legislature intended there to be a narrower meaning of the phrase 'in connection with' . . . it could have either: (1) used clarifying language to narrow the scope of the phrase 'in connection with'; or (2) used language other than 'in connection with' that has a more restrictive meaning." (Citation omitted; emphasis in original.) Id., 235–36.

Similarly, in the present case, had the legislature intended to limit the protections afforded under the anti-SLAPP statute to communications made *during* an official proceeding, it could have used clarifying language to that effect. See *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022) ("the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (internal quotation marks omitted)). Moreover, construing the phrase "in connection with" broadly in accordance with its plain meaning is consistent with our precedent applying the litigation privilege. As this court has observed, "[t]here is no requirement under Connecticut jurisprudence that to be considered part of a judicial proceeding, statements must be made in a courtroom or under oath or be contained in a pleading or other documents submitted to the court. Indeed, [t]he privilege extends beyond statements made during a judicial proceeding to preparatory communications that may be directed to the goal of the proceeding. . . . In addition . . . the absolute privilege that is granted to statements made in furtherance of a judicial proceeding extends to every step of the proceeding until final disposition." (Citation omitted; internal quotation marks omitted.) *Kenneson* v. *Eggert*, 196 Conn. App. 773, 783, 230 A.3d 795 (2020); see also *Hopkins* v. *O'Connor*, 282 Conn. 821, 832, 925 A.2d 1030 (2007) ("[t]he scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the

proceeding"). Because the litigation privilege and the anti-SLAPP statute have similar goals of protecting a person's right to seek relief through the judicial process or by otherwise petitioning the government without fear of being sued for doing so, it makes sense that the scope of protection each offers should be the same. Thus, we are not persuaded that Pearce's email falls outside the ambit of the anti-SLAPP statute simply because it did not occur during a hearing before the Probate Court.

As to whether Pearce's statement suggesting that the plaintiff was "borrowing funds" from the estate was made "in connection with" the issue under consideration or review by the Probate Court, the plaintiff argues that the court improperly relied on the California Court of Appeals' construction of California's anti-SLAPP statute in *Neville* v. *Chudacoff*, supra, 160 Cal. App. 4th 1255. According to the plaintiff, "[w]hile the court may look to other states for guidance if the statute is unclear or case law is absent on certain meanings, the trial court cannot wholesale add meanings based on another state's interpretation of its statute, which contains different language and substantially broadens the [breadth] and scope of the Connecticut statute which was not intended by the legislature." We conclude that the test adopted by the trial court is the proper construction of the statutory language.

Again, the statutory phrase "in connection with" is not defined, and the plain meaning of this phrase "necessarily includes *any* factual, contextual or causal relationship." (Emphasis in original.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, supra, 294 Conn. 235. In rejecting the plaintiff's argument that the communication had to relate to the specific issue under consideration or review, the trial court considered whether a greater degree of relevancy was required in the context of the anti-SLAPP statute. Given the absence of any

statutory definition or relevant precedent interpreting the phrase in the context of our anti-SLAPP statute, the trial court reasonably looked to California case law interpreting a provision of California's anti-SLAPP statute that has nearly identical language to § 52-196a (a) (3) (A). Compare General Statutes § 52-196a (a) (3) (A) (" '[r]ight to petition the government' means . . . communication *in connection with an issue under consideration or review by a . . . judicial . . . body*" (emphasis added)), with Cal. Code Civ. Proc. § 425.16 (e) (2) (" 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes . . . (2) any written or oral statement or writing made *in connection with an issue under consideration or review by a . . . judicial body*" (emphasis added)).

As noted previously in this opinion, the court adopted the test employed by California courts, which provides that a communication is made "in connection with" an issue under consideration by a judicial body if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation. See *Neville* v. *Chudacoff*, supra, 160 Cal. App. 4th 1266. As the trial court noted in its decision, this test is consistent with Connecticut's application of the litigation privilege, which includes a similar relevancy requirement. See, e.g., *Gallo* v. *Barile*, 284 Conn. 459, 470, 935 A.2d 103 (2007) ("we consistently have held that a statement is absolutely privileged if it is made in the course of a judicial proceeding and *relates to the subject matter of that proceeding*" (emphasis added)); *Kenneson* v. *Eggert*, supra, 196 Conn. App. 782 ("[W]e first determine whether . . . the statements at issue in this case were made during a judicial proceeding. If so, we then consider whether . . . the alleged misrepresentation is sufficiently relevant to the issues involved in those proceedings."). Accordingly, we adopt it for purposes of applying § 52-196a (a) (3) (A).

Applying that test in the present case, there is no question that Pearce's email, which was directed to counsel for the individual beneficiaries under the Spirito's will and concerned the plaintiff's handling of estate property in connection with a pending probate matter, is related to an issue under consideration or review by the Probate Court overseeing the administration of that estate. Rather than providing any arguments as to how this test is not consistent with the plain meaning of "in connection with" or why Pearce's email does not satisfy its requirements, the plaintiff solely challenges the court's reliance on California case law in reaching its conclusion. This contention warrants little discussion.

When courts consider an issue of first impression, they routinely consider decisions from other state and federal jurisdictions. See, e.g., *Squeo* v. *Norwalk Hospital Assn.*, 316 Conn. 558, 573, 113 A.3d 932 (2015) ("[w]hen contemplating issues of first impression with regard to Connecticut's common law, we often have sought to benefit from the collective wisdom and experience of our sister states"); *Connecticut Coalition for Justice in Educational Funding, Inc.* v. *Rell*, 295 Conn. 240, 299, 990 A.2d 206 (2010) ("[a] review of the sister state decisions in this area is of paramount importance to . . . a question of first impression in an area of constitutional law that uniquely has been the province of the states"); *Lovan C.* v. *Dept. of Children & Families*, 86 Conn. App. 290, 299–300, 860 A.2d 1283 (2004) ("[t]o aid in our determination, we find the decisions of our sister states persuasive"). Moreover, in conducting an analysis of Connecticut's anti-SLAPP statute, our Supreme Court recently explained that "[a]n examination of federal and sister state case law is particularly instructive with respect to the jurisdictional issue before [it] because the legislative history of our anti-SLAPP statute signifies that it was modeled after anti-SLAPP statutes that came before it in other states."

*Smith* v. *Supple*, 346 Conn. 928, 953 n.22, 293 A.3d 851 (2023). Accordingly, there is no merit to the plaintiff's assertion that the court improperly relied on persuasive authority from the California Court of Appeals. The trial court properly sought to determine the meaning of the statutory language in a reasoned manner and its interpretation is consistent with the plain statutory language.

Consequently, we conclude that the court properly determined that a communication is made "in connection with" an issue under review by a judicial body pursuant to § 52-196a (a) (3) (A) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation. We further conclude that, under this standard, Pearce's email was made in connection with an issue under consideration or review by the Wallingford Probate Court and was directed to another attorney, Crotta, who was directly involved in the litigation. It, therefore, constituted the exercise of her right to petition the government within the meaning of the statute.

2

The plaintiff also asserts that the court's conclusion that Pearce's email alleging that the "plaintiff was 'borrowing from the [estate] funds' [constituted] the exercise of a constitutional right in connection with a matter of public concern . . . is legally erroneous." The plaintiff's unsupported assertion is unavailing.

"Matter of public concern" is statutorily defined as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . ." General Statutes § 52-196a (a) (1).

The trial court concluded that the defendants' alleged conduct and communications were made in connection

with a matter of public concern because they "related to a charitable organization that was named as the sole residual beneficiary receiving its share of an estate and [to] the possible actions of the plaintiff and his client that might have interfered with that organization's rights under the will." As to Pearce's email in particular, the court concluded that "the statements that the plaintiff was borrowing estate funds or was responsible for irregularities or missing funds in the estate raised matters of public concern" because "[p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern" and because "the public has an interest in being informed of the outcome of disciplinary proceedings involving attorneys licensed to practice law in this state." (Internal quotation marks omitted.) As support for its conclusion, the court cited *Gleason* v. *Smolinski*, supra, 319 Conn. 415, in which our Supreme Court observed that "[p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern." (Internal quotation marks omitted.) The trial court also cited this court's decision in *Elder* v. *Kauffman*, supra, 204 Conn. App. 830 n.3, in which we stated that "[i]t is indisputable that the public has an interest in being informed of the outcome of disciplinary proceedings involving attorneys licensed to practice law in this state." Accordingly, the court concluded that Pearce's email concerned "an issue related to . . . economic or community well-being" pursuant to § 52-196a (a) (1) (B).

Although the plaintiff quotes the definition of "[m]atter of public concern," he neither analyzes that statutory definition nor addresses the court's reasoning for its conclusion that Pearce's email concerned an issue related to economic or community well-being. In short, the plaintiff has failed to marshal any arguments as to why the court's determination that Pearce's email suggesting that he improperly borrowed estate funds

related to a "[m]atter of public concern" was incorrect, and our own review of the statutory language reveals no error in the court's reasoning.[20] Thus, the plaintiff's claim fails.

## B

Second, the plaintiff claims that, even if the defendants satisfied their initial burden under § 52-196a (e) (3), the court incorrectly concluded that the plaintiff failed to satisfy his burden of demonstrating that there is probable cause that he would prevail on the merits of his complaint. We decline to review the plaintiff's claim due to inadequate briefing.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth

---

[20] The plaintiff also argues that "the conduct at issue does not involve a communication in a public forum," which is required for conduct to qualify as the exercise of the right of free speech under the anti-SLAPP statute. (Internal quotation marks omitted.) Because we have determined that the trial court properly concluded that the private email constituted an exercise of the defendants' rights to petition the government on a matter of public concern, and thus brings the plaintiff's complaint within the scope of the anti-SLAPP statute, there is no need for us to address whether that communication also constituted an exercise of Pearce's right of free speech. See *Robinson* v. *V. D.*, supra, 346 Conn. 1010 n.8 (having concluded that defendant asserted colorable claim under right to petition government, our Supreme Court declined to decide whether alleged statements also fell within statutory definitions of "right of free speech" and "right of association" (internal quotation marks omitted)).

their arguments in their briefs. . . . [B]riefing is inadequate when it is not only short, but confusing, repetitive, and disorganized." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022).

In support of this subclaim, the plaintiff argues that his complaint "sets forth with particularity the circumstances upon which the defendants breached the [settlement agreement] to which he is a party, defamed the plaintiff, are liable for defamation per se, committed fraud, and violated CUTPA. Clearly the plaintiff established facts strong enough to justify a reasonable [person] in the belief that [he] has lawful grounds for prosecuting the defendant[s] under any one of the five counts of his complaint." As previously noted in this opinion, the court concluded that the plaintiff lacked standing to assert a breach of the settlement agreement because he was not a party to it and failed to allege the necessary elements of both his fraud and CUTPA claims. The plaintiff, however, does not address any of the court's reasoning as to those counts. Moreover, he fails to address the court's conclusion that "all five of the counts . . . are barred by the defense of absolute immunity based on the litigation privilege."[21]

[21] We note that, in support of his "ex post facto" claim, the plaintiff argues that the trial court extended the litigation privilege "to include a communication in the specter of litigation; apparently meaning a communication where litigation is under serious consideration, thereby triggering the litigation privilege, which the plaintiff asserts is beyond the scope of Connecticut's statute." Although this vague assertion as to unspecified conduct in a separate part of his appellate brief references the court's application of the litigation privilege, it is insufficient to save the inadequacy of his brief as to this subclaim. Moreover, the court's conclusion that the litigation privilege extends to communications made outside of an official proceeding is not an extension of the scope of the litigation privilege, which "extends beyond statements made during a judicial proceeding to preparatory communications that may be directed to the goal of the proceeding." (Internal quotation marks omitted.) *Kenneson* v. *Eggert*, supra, 196 Conn. App. 783.

Consequently, by failing to address the dispositive bases for the court's conclusion that the plaintiff had failed to establish that he was likely to prevail on the merits of his complaint, his brief is inadequate for us to conduct any meaningful review of this claim. See *C. B.* v. *S. B.*, supra, 211 Conn. App. 630. Accordingly, we decline to review it.

II

The plaintiff also claims that the court erred by (1) "adopting language in the California anti-SLAPP statute and California case law not contained in the Connecticut anti-SLAPP statute in violation of the separation of powers under the constitution"; and (2) "adopting definitions of language in the Connecticut anti-SLAPP statute based upon California case law interpretation of the California statute in violation of the rule against ex post facto legislation as applied to the courts through the due process clause." The gravamen of both claims is that the court's consideration of persuasive authority from another state in construing a Connecticut statute somehow violates the separation of powers doctrine or the ex post facto clause under the federal constitution. Both claims are unavailing.

First, interpreting a statute is precisely within the power of the judiciary, as "[i]t is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." *Marbury* v. *Madison*, 5 U.S. 137, 177, 2 L. Ed. 60, 1 Cranch 137 (1803). As previously noted in part I A 1 of this opinion, when faced with an issue of first impression, courts routinely consider decisions from other state and federal jurisdictions and, in this particular context, "[a]n examination of federal and sister state case law is particularly instructive . . . because the legislative history of our anti-SLAPP statute signifies

that it was modeled after anti-SLAPP statutes that came before it in other states." *Smith* v. *Supple*, supra, 346 Conn. 953 n.22. Thus, the trial court's reliance on California case law to interpret and apply § 51-296a did not violate the separation of powers doctrine under the constitution.

Second, there is no ex post facto violation arising from the court's interpretation of § 52-196a. According to the plaintiff, the court's "unforeseen" application of California case law "amount[ed] to a denial of due process, as the new interpretation is retrospective, in that the court applied the new interpretation to the [complaint]," which was filed "before the memorandum of decision was published in this case, and it disadvantaged the [plaintiff] by awarding substantial attorney's fees" to the defendants. The plaintiff's claim is unavailing.[22]

"[A]s the text of the [ex post facto] [c]lause makes clear, it is a limitation upon the powers of the [l]egislature, and does not of its own force apply to the [J]udicial

---

[22] Insofar as the plaintiff's assertion that the court's construction and application of the statute in the present case "amount[ed] to a denial of due process" can be construed as a distinct claim independent of his ex post facto claim, his brief is devoid of any legal analysis in support of such a claim, and we therefore decline to review it. See, e.g., *OneWest Bank, N.A.* v. *Ceslik*, 202 Conn. App. 445, 467, 246 A.3d 18 (defendant's due process claim was unreviewable due to inadequate brief in which defendant made only conclusory statements), cert. denied, 336 Conn. 936, 249 A.3d 39 (2021). Furthermore, there is simply no merit to the plaintiff's alleged due process violation, the gravamen of which is that he did not prevail due to the court's interpretation of the statute. As the United States Supreme Court has explained, "[t]he essence of judicial decisionmaking—applying general rules to particular situations—necessarily involves some peril to individual expectations because it is often difficult to predict the precise application of a general rule until it has been distilled in the crucible of litigation." *Rivers* v. *Roadway Express, Inc.*, 511 U.S. 298, 312, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994). In the present case, the trial court performed its role by interpreting and applying the law, and the resulting disappointment of the plaintiff's individual expectations does not transform "[t]he essence of judicial decisionmaking" into a due process violation. Id.

[B]ranch of government. . . . Nevertheless, limitations on ex post facto judicial decisionmaking are inherent in the notion of due process. . . . [T]he United States Supreme Court [has] observed: If a state legislature is barred by the [e]x [p]ost [f]acto [c]lause from passing such a law, it must follow that a [s]tate Supreme Court is barred by the [d]ue [p]rocess [c]lause from achieving precisely the same result by judicial construction. . . . If a judicial construction of *a criminal statute* is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." (Citations omitted; emphasis added; internal quotation marks omitted.) *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 805–806, 950 A.2d 1220 (2008).

"It is well established that *the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them.* . . . [I]n an ex post facto analysis, a court must first determine whether the challenged law is a penal statute . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) *Rios* v. *Commissioner of Correction*, 224 Conn. App. 350, 360, 312 A.3d 1059, cert. denied, 349 Conn. 910, 314 A.3d 601 (2024).

The anti-SLAPP statute is not a penal statute; rather, § 52-196a "provides a *procedural* mechanism . . . to achieve an important substantive goal, namely, protecting the parties from expensive and time-consuming lawsuits on the merits. In that sense, the statute provides an expedited off-ramp for a party to avoid further litigation." (Emphasis added; internal quotation marks omitted.) *Smith* v. *Supple*, supra, 346 Conn. 946 n.16. The fact that the statute provides for the award of costs and reasonable attorney's fees to the prevailing party

does not transform the law into a penal statute. Therefore, because § 52-196a is not a penal statute, the plaintiff's ex post facto claim necessarily fails.

The judgment is affirmed.

In this opinion the other judges concurred.